IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.                                                Cr. No. 4:22-CR-354

JOHN JAIRO JARAMILLO PATIÑO

## MOTION TO DISCLOSE IDENTITY OF CONFIDENTIAL SOURCE

The defendant, JOHN JAIRO JARAMILLO PATIÑO, through his attorney, the Federal Public Defender, moves this Court to order the Government to disclose the identity of the confidential source in this case and to order that the Government provide the defense with the current address of the source and/or make the source available to the defense for the purpose of an interview.

### Factual Background

Mr. Patiño is currently charged with one count of conspiracy to distribute a controlled substance for the purpose of unlawful importation, in violation of 21 U.S.C. §§ 963 and 959(a), and two counts of international cocaine distribution, in violation of 21 U.S.C. § 959(a).

According to the Government, Mr. Patiño and his co-defendants were allegedly involved in the transportation of cocaine from Colombia to Mexico. The government contends that the codefendants solicited the assistance of confidential sources working with the Drug Enforcement Administration (DEA) to facilitate air transportation of

cocaine shipments. *See* Ex. A (DEA, Report of Investigation, File No. M2-21-0073).

On January 21, 2021, during a meeting between co-defendants and a DEA confidential source, the confidential source ("CS") asked about drug distribution routes, including whether the organization operated in Houston. *See* Ex. B (hidden camera footage recorded by CS). A co-defendant responded, "No, when they realize that you are sending things to the US, they would extradite you … we are interested in sending to Europe." *Id.*

Thereafter, on or about September 1, 2021, the government alleges that a co-defendant instructed the DEA CS to travel to a hotel in Bogota, Colombia, to receive drugs and money for shipment to Mexico City. *See* Ex. A. Upon arrival at the hotel, the codefendant allegedly placed a brown box into the vehicle being operated by the CS. *Id.*

The source then proceeded to the FedEx warehouse located at El Dorado airport in Bogota. *Id.* Upon screening the package with an x-ray machine, authorities reportedly discovered twenty-five brick-shaped packages bearing a tiger logo, along with 59,150,000 Colombian pesos. *Id.* The pesos were allegedly intended as payment to the CS for ensuring that the narcotics would be placed on an aircraft for air transportation. Subsequent field testing of the brick-shaped packages yielded a positive result for cocaine. *Id.*

On September 7, 2021, DEA Special Agents assigned to the Mexico City Country Office informed officials at the Bogotá Country Office that an international controlled

delivery (ICD) was being coordinated between Colombia and Mexico. DEA Report of investigation, TA-21-0001 at 2. DEA agents subsequently prepared an official legal request for assistance with the ICD and submitted it to the Mexican federal prosecutor's office. *Id.* The Mexican federal prosecutor approved and signed the request. *Id.* That same day, the prosecutor informed a Mexican Sensitive Investigations Unit (SIU) agent that an anonymous tip had been received indicating that suspected narcotics were on board Avianca Flight 72 and requested that the flight's cargo be thoroughly searched. *Id.*

On September 10, 2021, the CS allegedly received messages from a co-defendant, Moreno, indicating that an alert had been placed on Avianca Flight 72 regarding suspected narcotics, and that authorities were monitoring the flight to intercept the drugs upon its arrival in Mexico City. *Id.* When Avianca Flight 72 landed at the Mexico City International Airport, law enforcement officers observed a cardboard box suspected of containing narcotics. *Id.* Officers removed the box, and a narcotics-detection canine gave a positive alert. *Id.* The box was transported to the AIC Interpol Office, where it was opened and found to contain twenty-five kilograms of a substance that later tested positive for cocaine. *Id.*

## Legal Standards

The leading case on the government's privilege to withhold the identity of informants is *Roviaro v. United States*, 353 U.S. 53 (1957), in which the Supreme Court explained:

3

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of that privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that function.

*Roviaro*, 353 U.S. at 59 (citations omitted). However, the privilege is not absolute. The Supreme Court recognized that the privilege is limited by

> the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused or is essential to a fair determination of his cause, the privilege must give way. In these situations, the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

*Roviaro*, 353 U.S. at 60-61 (footnotes omitted).

In *Roviaro*, the Court articulated the method for evaluating whether the identity of a confidential source should be ordered disclosed.

> The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro*, 353 U.S. at 62. The Fifth Circuit has developed a three-part test to guide courts in applying *Roviaro*:

> First, we evaluate the level of the source's involvement in the alleged activity; the greater the participation, the more likely disclosure is required. Second, we consider the helpfulness of disclosure to the asserted defense.

4

The third factor is the Government's interest in nondisclosure. *United States v. De Los Santos*, 810 F.2d 1326, 1331 (5th Cir. 1987); *accord United States v. Ortega*, 854 F.3d 818, 824 (5th Cir. 2017); *United States v. Orozco*, 982 F.2d 152, 155 (5th Cir. 1993).

The "informer's level of involvement with the criminal activity is an important consideration…The more active the participation, the greater the need for identification." *United States v. Ayala*, 643 F.2d 244, 246 (5th Cir. 1981) (citations omitted). In *Ayala*, the informer was "not an integral member of the criminal activity involved, but neither was she merely a passive observer." *Id.* at 246. The informer arranged the meeting between the defendant and codefendant, acted as an intermediary, and handled the money during a drug transaction. Because the informant was a key eyewitness and there was no evidence of risk to their safety, the court reversed the district court's denial of disclosure. *Id.* at 247.

**<u>Argument</u>**

The confidential source in this case was not merely a passive observer or a tipster, he played an active and indispensable role leading to the client's arrest. Under *Roviaro v. United States*, 353 U.S. 53 (1957), and its progeny, including *United States v. Ayala*, 643 F.2d 244 (5th Cir. 1981), disclosure of the source's identity is required where, as here, the source was a direct participant in the alleged criminal conduct and is the only person in a position to offer critical information on contested issues of fact.

### A. The confidential source was highly involved in the alleged activity.

Here, the confidential source was not merely present, he was instrumental. Like the source in *Ayala*, he did far more than pass along information: he initiated contact, communicated directly with the client, coordinated meeting locations, physically received narcotics, and facilitated their transportation by placing them on an aircraft. These actions were not incidental. The charges against the client rest entirely on the source's interactions with the client and co-defendants, both directly and indirectly.

The CS is thus the only individual who can provide first-hand testimony about the circumstances of the alleged transaction, the intent and knowledge of the parties involved, and the context in which the communications and exchanges occurred. He alone has knowledge of whether the client's conduct was knowing, voluntary, or possibly misrepresented by law enforcement or others.

### B. The disclosure of the source's identity and whereabouts are crucial to the defense.

Second, disclosure of the source's identity and availability for examination is critical to the defense, as his direct communications with the client directly bear on the client's knowledge and intent—both of which are central to the Government's case. The source's repeated inquiries about whether the client wanted the drugs transported to Houston raise serious and material questions about whether the client knew, intended, or even agreed that the drugs would ultimately enter the United States. This line of questioning by the source suggests potential inducement, confusion, or

miscommunication—matters which go to the heart of the *mens rea* element of the offense.

The source is the *only* other participant in these crucial conversations, and thus the only person who can provide context and clarity beyond the limited and potentially ambiguous body camera footage. The prosecution's portrayal of these conversations cannot be meaningfully challenged or investigated without access to the source, whose statements and conduct are foundational to the Government's theory of the case.

Absent disclosure, the defense is placed at a structural disadvantage—it cannot properly assess, investigate, or impeach the source's role or motivations, nor explore alternative explanations or defenses. Disclosure is therefore not only appropriate, but constitutionally required under *Roviaro* and its progeny.

These facts squarely place this case within the scope of *Roviaro*, where the Supreme Court held that disclosure is required when the source is "the only witness in a position to amplify or contradict the testimony of government witnesses." *Roviaro*, 353 U.S. at 64. The Fifth Circuit has further emphasized that "[t]he more active the participation, the greater the need for identification." *Ayala*, 643 F.2d at 246. Here, the source was central to the formation of the alleged conspiracy and instrumental in the logistics of the drug sale.

C.   **The Government has no legitimate interest in nondisclosure.**

Finally, the Government has failed to articulate any specific or compelling interest justifying nondisclosure of the source's identity, relying instead on vague and

generalized claims of protecting source anonymity. However, such abstract concerns carry little weight where, as here, the source is not a peripheral figure but a material witness with direct, first-hand knowledge of the alleged criminal conduct.

## Conclusion

The Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957), made clear that the balance tips firmly in favor of disclosure when the source's testimony is relevant and helpful to the defense or essential to a fair determination of the case. The Government cannot meet its burden by invoking confidentiality in the abstract while simultaneously relying on the source's actions and communications as the basis for the prosecution. Where, as here, the source is not merely a background figure but a material witness with first-hand knowledge of the critical events, generalized concerns are insufficient to overcome the defendant's right to prepare a meaningful defense. *See Roviaro*, 353 U.S. at 60–61.

Accordingly, Mr. Patino asks this Court to order disclosure of the source and to require the Government to produce him for an interview by the defense or, alternatively, to produce his current address. *See Roviaro*, 353 U.S. at 65 n.15.

If the Court is not satisfied with the showing of entitlement to disclosure, Mr. Patino suggests that the Court hold an evidentiary hearing and conduct an *in camera* examination of the confidential source to determine whether his identity should be disclosed. *See, e.g., De Los Santos*, 810 F.2d at 1330-31; *see also Orozco*, 982 F.2d at 155.

For the foregoing reasons, Mr. Patino requests that this Court (1) order

disclosure of the identity of the source in this case; and (2) that the Court order that the Government produce the source for an interview and to provide the defense with his current address.

        Respectfully submitted,

        PHILIP G. GALLAGHER
        Federal Public Defender
        Southern District of Texas No. 566458
        New Jersey State Bar No. 2320341

        s/ *Tatiana Obando*
        TATIANA OBANDO
        Assistant Federal Public Defender
        Southern District of Texas No.
        New Hampshire State Bar No.
        ERICA L. WHEELER
        Research and Writing Specialist
        Attorneys for Defendant
        440 Louisiana Street, Suite 1350
        Houston, TX 77002-1056
        Telephone: (713) 718-4600

## CERTIFICATE OF CONFERENCE

I, Tatiana Obando, certify that an attempt to consult with Assistant United States Attorney Eric Smith was made and it was unsuccessful.

/s Tatiana Obando
TATIANA OBANDO

## CERTIFICATE OF SERVICE

I, Tatiana Obando, certify that on July 14, 2025, a copy of the foregoing Motion to Disclose Identity of Source was served by Notification of Electronic Filing and was delivered by email to the office of Assistant United States Attorney Eric Smith.

/s Tatiana Obando
TATIANA OBANDO